UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WALTER MELVIN,

    Plaintiff,

v.                                                          Case No: 8:18-cv-1911-T-36SPF

OCWEN LOAN SERVICING LLC,

    Defendant.
_____/

# **O R D E R**

This matter comes before the Court upon the Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion") (Doc. 14), and Plaintiff's response in opposition (Doc. 22). In the Motion, Defendant argues that the D.C. Circuit Court of Appeals' recent order vacating parts of a 2015 Federal Communications Commission ruling changed the definition of an automatic telephone dialing system and excludes debt collection calls from the statute. Thus, it argues, Plaintiff's First Amended Complaint states no claim for proper relief under the TCPA. The Court, having considered the Motion and being fully advised in the premises, will deny Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

    **I.**    **Background**

Plaintiff, Walter Melvin, sues Defendant Ocwen Loan Servicing, LLC ("Ocwen") for violating the Telephone Consumer Protection Act, ("TCPA") under 47 U.S.C. §§ 227(b)(1)(A)(iii), (3) and the Florida Consumer Collection Practices Act ("FCCPA") under Florida Statutes § 559.72(7). Melvin asserts that Ocwen called his cellular telephone without his consent on numerous occasions.

Melvin initiated the case on August 3, 2018, then filed an Amended Complaint (the "Complaint") on September 11, 2018, (Doc. 10). The Complaint alleges the following. Ocwen is the successor-in-interest to a mortgage loan Melvin procured on his property. *Id.* at ¶ 11. To collect on the mortgage debt, Ocwen placed eighty calls to his cellular telephone number between January 2015 and March 2017. *Id.* at ¶¶ 10, 18. Ocwen used an " 'automated telephone dialing system' as specified by the TCPA". *Id.* at ¶ 19. Ocwen also used a pre-recorded or artificial voice message. *Id.* at ¶ 42. Ocwen made these calls despite Melvin's lack of express prior consent and request to stop making them. *Id.* The calls caused "emotional distress, anxiety, fear, worry, embarrassment, and mental suffering, pain, anguish, and loss of the capacity for the enjoyment of life." *Id.* at ¶ 35.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation." *Id.*

A facial attack on subject matter jurisdiction under Rule 12(b)(1)[1] "requires [] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (citations omitted). In assessing a motion to dismiss under Rule 12(b)(1) the Court affords Plaintiff the same safeguards as those provided in opposing a Rule 12(b)(6) motion, it considers all allegations as true and is confined to the four corners of the complaint. *Id*.

### III. Discussion

Ocwen argues that the Court must dismiss the Complaint because after *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), which overruled the Federal Communication Commission's ("FCC") 2015 Order[2], and by imposition the 2008 and 2003 FCC Orders[3], the Court is bound by the definition of an automated telephone dialing system ("ATDS"), as expressed in the 1992 FCC Order.[4] Thus, it argues, the TCPA does not apply to debt collection calls.

Further, Ocwen maintains that Melvin has not sufficiently alleged that it called him using an ATDS system because the allegations do not establish that Ocwen used a dialer that generates and dials random or sequential numbers. It claims that the allegations in the Complaint are unclear and inconsistent because it alleges both that Ocwen's system included an "inherent random number generator" which functions to store or produce the numbers dialed and that Ocwen had an interest

---

[1] Although Defendant brings the Motion under Rule 12(b)(6), it also argues that the Court lacks supplemental jurisdiction over the FCCPA claim. *See* Doc. 14 at 17.
[2] In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (2015 Declaratory Ruling), 30 FCC Rcd. 7961 (2015).
[3] In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 (2008 Declaratory Ruling), 23 FCC Rcd. 559 (2008); In re Rules & Regs Implementing the TCPA, 18 FCC Rcd. 14014 (2003).
[4] In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 7 F.C.C. Rcd. 8752, 8773 (1992).

3

in his mortgage and called Melvin in an attempt to collect on it. Thus, Ocwen argues, the calls could not have been random or sequential. Ocwen also objects to Melvin's citation to a stipulation in an unrelated 2015 case. There, Ocwen stipulated that its phone system was an ATDS. *See* Doc. 10 at ¶ 19, Doc. 10-1 at 3 [17:3-9].[5] Last, Ocwen argues that if the Court dismisses the TCPA claim, it will no longer have supplemental jurisdiction over the FCCPA claim, subjecting it to dismissal.

Melvin argues the following. Ocwen misstates and misinterprets recent case law. The Complaint alleges with legal sufficiency that Ocwen called him with an ATDS. And because the TCPA claim survives, the Court has supplemental jurisdiction over the FCCPA claim. Melvin agrees that *ACA* vacated the 2003, 2008, and 2015 FCC orders, and their interpretation of the statutory term "automatic telephone dialing system." But, he argues, *ACA's* vacatur of certain limited portions of those FCC Orders did not exempt debt collection calls from the TCPA, particularly under § 227(b)(1)(A)(iii).

The *ACA* decision has generated much discussion among the district courts. Although the Eleventh Circuit has yet to address it, the Ninth Circuit squarely addressed its impact as discussed below. The Court concludes that the *ACA* decision did not necessarily exempt debt collection calls from the TCPA and that the Complaint states a claim for relief under the TCPA because it also alleges that Ocwen used a pre-recorded or artificial voice.

   a. **TCPA Generally**

The TCPA prohibits anyone from using an automated telephone dialing system to call a cell phone number without the called party's prior express consent. 47 U.S.C. § 227(b)(l)(A)(iii);

---

[5] Transcript of Trial Day 1, *Drew v. Ocwen Loan Servicing, LLC*, M.D. Fla. Case No.: 8:14-cv-369- RAL-TGW (Sept. 21, 2015).

*see also Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1305 (11th Cir. 2015). The relevant provision of the TCPA provides:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States ... [t]o make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

The TCPA provides a private right of action for any violation of this provision and permits the recovery of the greater of $500 or actual losses, with the potential for treble damages if a court determines that the violation was willful. *Id.* at § 227(b)(3). The TCPA explicitly exempts from its purview a "call [ ] made solely to collect a debt owed to or guaranteed by the United States." *Id.* at § 227(b)(1)(A)(iii).

To state a claim for violating the TCPA, a plaintiff must sufficiently allege these elements: "(1) a call was made to a cell or wireless phone, (2) by the use of an automatic dialing system or an artificial or prerecorded voice, and (3) without prior express consent of the called party." *Augustin v. Santander Consumer USA, Inc.*, 43 F. Supp. 3d 1251, 1253 (M.D. Fla. 2012)(citing 47 U.S.C. § 227(a)(1)). The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

### b. *ACA*

After the D.C. Circuit's Order in *ACA*, several courts have continued to rely on the 2003 and 2008 FCC orders for guidance as to what constitutes an ATDS. Others have deferred solely to

5

the statutory language. *See, e.g., Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018) (using statutory construction to determine what constitutes an ATDS under the TCPA).

Many courts, including the Ninth Circuit, agree that under *ACA*, the FCC's prior orders defining automatic and predictive dialers under the TCPA are not binding. *See Marks*, 904 F.3d at 1049 ("Because the D.C. Circuit vacated the FCC's interpretation of what sort of device qualified as an ATDS, only the statutory definition of ATDS as set forth by Congress in 1991 remains."); *King v. Time Warner Cable Inc.*, 894 F.3d 473, 476–77 (2d Cir. 2018) (holding that *ACA* "invalidated that [FCC 2015 Declaratory Ruling] and thereby removed any deference we might owe to the views the FCC expressed in it"); *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018) (holding that, given *ACA*, the court could interpret the statutory definition of an autodialer as it had before the FCC's 2015 order).

The Eleventh Circuit has yet to rule on this issue, though several cases addressing it are pending. Courts within this circuit, including this one, have generally adopted the position that *ACA* voided and vacated the 2003 and 2008 FCC Orders' interpretation of the statutory meaning of an ATDS. *See, e.g., Gonzalez v. Ocwen Loan Servicing, LLC*, No. 5:18-CV-340-OC-30PRL, 2018 WL 4217065, at *6 (M.D. Fla. Sept. 5, 2018) ("[T]he D.C. Circuit necessarily vacated the definition in the prior FCC Orders that the 2015 Order merely reaffirmed.").

And district courts have not shied away from defining an ATDS in the wake of *ACA*. *See id*. (finding that because "the question as to what devices are ATDSs is still unresolved ... this Court must answer that question by returning to the statutory definition of an ATDS found in [the TCPA]"); *Adams v. Ocwen Loan Servicing, LLC*, No. 18-81028-CIV, 2018 WL 6488062, at *3 (S.D. Fla. Oct. 29, 2018) (denying motion to dismiss and finding Ocwen's definition of an ATDS overly restrictive); *Ramos v. Hopele of Fort Lauderdale, LLC*, No. 17-62100-CIV, 2018 WL

6

4568428, at *2 (S.D. Fla. Sept. 20, 2018) (reasoning that whether a device is an ATDS depends on how much human-directed action is required by the system, ruling at summary judgment that "the undisputed facts establish that the EZ-Texting system could not send the text messages at issue without a significant amount of human involvement" and was thus not an automatic dialer under the TCPA).

*See also Reyes v. BCA Fin. Servs., Inc.*, 312 F.Supp. 3d 1308, 1320 (S.D. Fla. 2018) (noting that although "the *ACA International* case has given the Court considerable pause ... the Court finds that the prior FCC Orders are still binding. Therefore, the *ACA International* case does not change the Court's conclusion on the ATDS issue."); *Sessions v. Barclays Bank Delaware*, 317 F.Supp. 3d 1208, 1212 (N.D. Ga. 2018) (concluding that the "D.C. Circuit clearly held that it invalidated all of the FCC's pronouncements as to the definition of 'capacity' as well as its descriptions of the statutory functions necessary to be an ATDS."); *Maddox v. CBE Grp., Inc.*, No. 1:17-CV-1909-SCJ, 2018 WL 2327037, at *4 (N.D. Ga. May 22, 2018) ("Given the *ACA Int'l* decision, the Court relies on the FCC's 2003 interpretation of § 227(a)(1) to determine if Defendant's system qualifies as an ATDS.").

Court's within the Eleventh Circuit have also examined the impact of *ACA* on cases involving predictive dialers used to make debt collection calls. *See Heard v. Nationstar Mortg. LLC*, No. 2:16-CV-00694-MHH, 2018 WL 4028116, at *6 (N.D. Ala. Aug. 23, 2018) ("An entity attempting to collect a debt will not generate phone numbers randomly or sequentially without regard to whether the person being called owes the company money. In that regard, an entity like Nationstar will always make its collection calls with reference to a relatively narrow, predetermined list of telephone numbers. But this fact does not prevent the TCPA from applying to Nationstar's predictive collection calls. Again, Nationstar's proposed interpretation of the TCPA

7

is too restrictive."). *See also Northrup v. ITG Insurance Agency LLC et al*, Case No.: 8:17-cv-01890-CEH-JSS, Doc. 80 (Jan. 3, 2019) (Honeywell, J.) (discussing *ACA* and its impact on the FCC definition of an ATDS, ultimately denying defendant's motion for summary judgment without prejudice as premature because the record lacked sufficient evidence to establish an absence of a genuine material fact on whether its phone system qualified as an ATDS).

Ultimately the district courts must grapple with this question until they receive further guidance from the FCC, the D.C. Circuit, or their respective circuit courts of appeals.

### c. Allegations in the Complaint

Plaintiff's Complaint is sufficient to allege that Ocwen violated the TCPA. *Accord Adams*, 2018 WL 6488062, at *3 (finding these allegations sufficient to allege ATDS element of TCPA claim: Defendant made over 310 calls to his cellular telephone and ignored his repeated demands to cease); *Gonzalez*, 2018 WL 4217065, at *5, n. 7 (rejecting the argument that the TCPA does not govern debt collection calls).

In *Gonzalez*, the court noted that just because *ACA* vacated one aspect of an FCC order does not mean that the entire order is void. 2018 WL 4217065 at *5, n. 7. The court noted that Ocwen provided no authority for ignoring all aspects of the 2003 FCC ruling, including the proposition that the TCPA applies to debt collectors. The court suggested excising the offending portion of the 2003 FCC Order that *ACA* held invalid. *Id*. It ultimately determined that under The Hobbs Act,[6] it had to apply the part of the 2003 FCC Order that pronounced the TCPA applies to debt collection calls. *Id*.

The *Gonzalez* court concluded that a predictive dialer that has both the capacity and present ability to generate random or sequential telephone numbers and dial them is an ATDS under the

---

[6] 47 U.S.C. § 402(a).

8

TCPA. *Id.* at *6. Using that definition, it held that plaintiff sufficiently stated a claim under the TCPA when he alleged that he received a vast number of calls, he heard a pause before a voice coming on, and received pre-recorded messages. *Id.* (citing *Murphy,* 797 F.3d at 1307).

In *Adams*, plaintiff alleged that: Ocwen called him on his cellular telephone based on an alleged mortgage debt; he revoked his consent to receive calls several times; Ocwen placed over 300 calls allegedly using an ATDS, a predictive dialing system, or an artificial or pre-recorded voice. 2018 WL 6488062, at *1. Ocwen sought dismissal arguing that plaintiff had not sufficiently alleged that it used an ATDS or pre-recorded voice. *Id.* at *2. And it argued that the TCPA did not prohibit debt collection calls. *Id.*

After reviewing the FCC Orders and *ACA*, the Court denied dismissal. On the ATDS issue, it found Ocwen's proposed definition of an ATDS overly restrictive. The Court agreed that a plaintiff must do more than merely recite the statutory elements of the use of an ATDS or pre-recorded voice. He must also state additional facts to support that allegation. *Id.* at *4. It held that Adams had done just that when he alleged that Ocwen made over 300 calls and ignored his demand to stop calling, both of which inferred an autodialing system. At the dismissal stage, the court found these allegations sufficient. But it noted that Ocwen could address the issue again at summary judgment upon a complete record. *Id.*

The *Adams* court also rejected Ocwen's argument that the TCPA did not apply to debt collection calls. The court noted that Ocwen provided no authority to invalidate the entire 2003 FCC Order, particularly the part regarding debt collection calls. *Id.* (citing *Gonzalez*, 2018 WL 4217065 at *5, n. 7).

The Court is persuaded by the reasoning in *Gonzalez* and *Adams* and concludes that the portion of the 2003 FCC Order pronouncing that the TCPA applies to debt collectors is the

9

operative law until further guidance from the FCC or the Eleventh Circuit or other binding authority. *See Murphy,* 797 F.3d at 1307 (quoting *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120–21 (11th Cir. 2014) ("District courts may not determine the validity of FCC orders, including by refusing to enforce an FCC interpretation, because '[d]eeming agency action invalid or ineffective is precisely the sort of review the Hobbs Act delegates to the courts of appeals in cases challenging final FCC orders.' ")). Defendant's Motion is denied on this basis.

Melvin's Complaint sufficiently alleges an ATDS. Melvin alleged that Ocwen made over eighty calls, continued those calls after several demands to stop them, he heard silence and a clicking sound once he answered the phones, which may suggest the use of an ATDS. Doc. 10 at ¶¶ 17-20. But Ocwen can revisit this issue on summary judgment. Defendant's Motion is denied on this basis.

In any event, Melvin's allegations that Ocwen used a pre-recorded or artificial voice for the calls to his cellular telephone, *id*. at ¶¶ 17c, 26, 42, are sufficient to state a violation of the TCPA. 47 U.S.C. § 227(b)(1)(A)(iii). *See also Gonzalez,* 2018 WL 4217065 at *7 ("So even if Gonzalez had failed to state a claim regarding Ocwen's use of an ATDS, his TCPA claim would proceed based on his allegation that Ocwen used an artificial or prerecorded voice.").

### d. FCCPA

Ocwen did not challenge whether Melvin sufficiently alleged a claim under the FCCPA, only that the Court would lack jurisdiction once it dismisses the TCPA claims. Melvin's allegations state a basic claim for violating the FCCPA.[7] Given the Court's ruling above, that the TCPA claim

---

[7] Florida Statutes makes it unlawful for a person collecting a debt to "willfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. § 559.72(7).

10

is sufficiently alleged, the FCCPA claim stands, as the Court has supplemental jurisdiction over it. Defendant's Motion is denied on this basis.

## IV. Conclusion

At bottom, the Complaint alleges sufficient facts to survive dismissal despite the *ACA* decision overruling, in part, the 2015 FCC Order. *ACA* does not appear to have vacated the portion of the 2003 FCC Order pronouncing that the TCPA governs debt collection calls. The Complaint otherwise alleges violations of the TCPA because of Ocwen's use of a pre-recorded or artificial voice message. And the Court will exercise supplemental jurisdiction over the FCCPA claim given the survival of the federal cause of action. Defendant's Motion will be denied in its entirety.

Accordingly, it is **ORDERED**:

1. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 14) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on May 3, 2019.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any